UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| MINDI PANITCH, by her legal guardian, Kenneth N. Panitch, M.D., | : | Hon. Joseph H. Rodriguez |
| Plaintiff, | : | Civil Action No. 14-7126 |
| v. | : | |
| JENNIFER VELEZ, Commissioner, New Jersey Department of Human Services, in her official and individual capacities, et al., | : : | MEMORANDUM OPINION & ORDER |
| Defendants. | : | |

     This matter is before the Court on its own motion and subsequent Order to Show Cause why this case should or should not be dismissed for lack of federal subject matter jurisdiction [29]. Also before the Court is Defendants' motion to dismiss the Complaint [22] and Plaintiff's second motion for an Order to Show Cause why a preliminary injunction should not issue [26] and related motion for an Order to Show Cause why the Court should not order expedited limited discovery [27]. In order for the Court to make a properly informed decision regarding these motions, more information is needed from the parties, as set forth here.

Factual Background & Procedural History

     On or about March 26, 2014, Plaintiff Mindi Panitch, by her brother and legal guardian Kenneth N. Panitch, applied for eligibility for the services of New Jersey's Department of Human Services, Division of Developmental Disabilities ("DDD").[1] At that time, Plaintiff resided in Wisconsin. Therefore, on May 19, 2014, the DDD denied

---

[1] An individual must be determined eligible for services under this chapter before the Division can provide services. N.J.A.C. 10:46-2.1(a). It is the Division's policy to fund services in the State of New Jersey. N.J.A.C. 10:46-2.1(k).

Plaintiff's application because she did not reside in New Jersey. By letter dated June 11, 2014, Plaintiff filed a State administrative appeal, formally contesting DDD's denial of her eligibility. On June 13, 2014, the DDD advised Plaintiff that it could not assume immediate funding for her services while she resided in Wisconsin. By letter dated July 25, 2014, the DDD acknowledged Plaintiff's formal contest and commenced the administrative review process. On October 6, 2014, Plaintiff withdrew the appeal to allow for an interview by DDD.

On October 7, 2014, Plaintiff arrived in New Jersey, placed by her brother at Bancroft's Judith B. Flicker Center in Voorhees, which allegedly is accredited to accept New Jersey Medicaid recipients. She submitted a new application for eligibility on October 14, 2014. On October 16, 2014, the DDD notified Plaintiff that it would not conduct an interview to determine her eligibility until her temporary funding from Wisconsin was exhausted. By letter dated October 27, 2014, the DDD again advised that, per N.J.A.C. 10:46-2.2(e), Plaintiff was not eligible for services because her residential placement in New Jersey was funded by a public agency in another State.[2]

---

[2] (a) **An individual must be a resident of New Jersey before the Division can provide services.** It shall be the responsibility of the individual applying for eligibility, or his or her guardian, to establish residency in the State of New Jersey. Residency shall be determined in the following manner:

1. An individual applying for eligibility shall be deemed a resident of the State if he or she lives in the State as his or her primary residence at the time of application for eligibility, unless the individual meets the criteria outlined in (a)2 below. If an individual has a guardian, the guardian must also live in the State as his or her primary residence at the time of application for eligibility, unless the guardianship determination does not include residential decision-making by the guardian.

2. When an individual applying for eligibility is residing in an out-of-State residential placement at the time of application for eligibility, she or he shall indicate on the application that it is their intention to return to New Jersey to receive in-State services no later than six months after eligibility has been established. If the individual does not

return to New Jersey within six months of the determination of eligibility, the individual will not have met the residency requirement, and eligibility will be rescinded. If the individual is not yet 21 years of age, the individual will have no more than six months after their 21st birthday to return to New Jersey or the individual will not have met the residency requirement and eligibility will be rescinded.

(b) If an individual 21 years of age or older has already been determined functionally eligible for services and is residing in an out-of-State placement, the individual shall return to New Jersey within six months of notification from the Division or the individual will no longer meet the residency requirement and eligibility will be rescinded. An individual whose eligibility is rescinded under this section may reapply at any time if she or he returns to New Jersey and is living in the State as his or her primary residence.

1. If the individual's out-of-State residential placement is being funded by the Division, the individual may choose to either return to his or her family home in New Jersey and receive in-home supports, or shall be offered an in-State residential placement.

2. If the individual's out-of-State residential placement is not being funded by the Division, but the individual meets the emergency criteria listed in N.J.A.C. 10:46B, the individual shall be offered in-State emergency services.

(c) Exceptions to (a)2 and (b) above may be made with the authorization of the Assistant Commissioner in one of the following two circumstances only:

1. The Division has been unable to make an offer of placement within the six-month timeframe, and the individual and his or her guardian are fully cooperating and making substantial and documented good faith efforts to further the goal of locating in-State services. Substantial and documented good faith efforts include, but are not limited to: attending all transitional and planning meetings, participating in in-State program visits, completing all necessary waiver and other paperwork, and responding to all Division requests for information in a timely manner; or

2. The individual's services are reimbursed by Medicaid under the Community Care Waiver (CCW) and health and safety can be assured despite the individual not residing in the State.

(d) If an individual who has a guardian is admitted to services, and the guardian moves out-of-State, the individual may remain in Division services. Additionally, the guardian is free to request a discharge from services or an interstate transfer.

(e) **If any individual is receiving services funded totally or partially by a public or private agency in another state, that individual shall not be considered a resident of New Jersey.**

N.J.A.C. 10:46-2.2 (emphasis added).

On November 13, 2014, Kenneth N. Panitch on behalf of his sister, Mindi Panitch, filed the Complaint with this Court.  Count I asserts Violation of the Equal Protection Clause of the 14th Amendment: "Defendants' process for determining Plaintiff's eligibility for Medicaid services discriminatorily burdens her fundamental right to interstate travel on the basis of disability and wealth."  Count II is for Violation of the Privileges and Immunities Clause of Article IV: "Defendants' exclusion from eligibility for Medicaid services persons with disabilities who are domiciled in NJ but receiving funding from an agency in a State where they were previously domiciled treats such persons as non-residents of NJ who cannot apply for services and are ineligible to be placed on waiting list for services."  Count III alleges Violation of the Privileges and Immunities Clause of the 14th Amendment: "Defendants' exclusion from eligibility for Medicaid services persons with disabilities who are domiciled in NJ but receiving funding from an agency in a State where they were previously domiciled treats such persons as non-residents of NJ who cannot apply for services and are ineligible to be placed on waiting list for services."

Count IV of the Complaint asserts a Violation of Title XIX of the Social Security Act, 42 U.S.C. § 1396-1396v, the Medicaid Act, and implementing regulations at 42 C.F.R. § 483.400 et seq. by: "a) Failing to provide services for which she is eligible with reasonable promptness, in violation of 42 U.S.C. 1396a(a)(8)" and "b) Failing to provide her with mandatory services and designated optional services, including services in an ICF/ID [Institutional Care Facility for Individuals with Intellectual Disabilities],[3] to

---

[3] "Intermediate Care Facility for Individuals with Intellectual or Developmental Disabilities (ICF/ID-DD)" means an institution (or distinct part thereof) for individuals with intellectual or developmental disabilities. N.J.A.C. 10:46-1.3. ICF/ID is available only for individuals in need of, and receiving, active treatment (AT) services. AT refers

which she is entitled as a categorically needy recipient of Medicaid services, in an amount, duration and scope that is no less than that available to other categorically needy recipients, in violation of 42 U.S.C. § 1396a(a)(10)(B)(I)(ii) and 42 C.F.R. § 440.240."

Count V alleges Violation of the ADA, 29 U.S.C. §12101, by discriminatorily failing to provide services, and Count VI asserts a Violation of Section 504 of the Rehabilitation Act of 1973, 42 U.S.C. § 794.

On November 24, 2014, Plaintiff filed a Motion for an Order to Show Cause why a preliminary injunction should not issue ordering Defendants to continue funding Plaintiff's residential placement [11]. Argument was heard on December 8, 2014 and the motion was denied [18]. At that time, Defendants argued that Plaintiff attempted to enjoin the enforcement of a New Jersey agency rule, N.J.A.C. 10:46-2.2, designed to prioritize the allocation of limited funds to eligible developmentally disabled New Jersey residents (per a waiting list). Similarly situated individuals wait years for the same services, according to the defense. The DDD maintains a waiting list for access to the home and community-based waiver[4], which is a prerequisite for access to out-of-home

---

to aggressive, consistent implementation of a program of specialized and generic training, treatment and health services. AT does not include services to maintain generally independent clients who are able to function with little supervision and who do not require a continuous program of habilitation services.
http://www.medicaid.gov/medicaid-chip-program-information/by-topics/delivery-systems/institutional-care/intermediate-care-facilities-for-individuals-with-mental-retardation-icfmr.html.

[4] "Waiver" means a Medicaid waiver authorized by the Federal Centers for Medicare and Medicaid Services (CMS), pursuant to a program in which states request permission from CMS to provide a broad array of services, excluding room and board, that are not otherwise covered under the Medicaid program. These services are designed to support an individual in the individual's home and community, thereby preserving the

residential placements.  Jones Cert., ¶ 4.  In November 2014, approximately 6,220 individuals were on the waitlist.  Jones Cert., ¶ 4.

On December 10, 2014, Defendants filed a letter with the Court indicating that the DDD was willing to accept Plaintiff's application for eligibility and for emergency services,[5] and hold such in abeyance until Plaintiff's out-of-State funding terminated on December 22, 2014.  On December 12, 2014, Bancroft advised Plaintiff's brother of its intent to discharge Plaintiff from the Flicker Center in 30 days.  On December 22, 2014, Plaintiff's brother applied for emergency services and for Plaintiff's acceptance into the Community Care Waiver Program.[6]

---

individual's independence and bonds to family and friends, at a cost that is not higher than institutional care. N.J.A.C. 10:46-1.3.

"Waiver services" means the services available in the authorized Medicaid waiver program in which an individual is enrolled. N.J.A.C. 10:46-1.3.

[5] The Division of Developmental Disabilities, Department of Human Services intends this chapter to establish standards and criteria for the placement of eligible persons, pursuant to N.J. Stat. Ann. § 30:4–25.6. Placements are made in accordance with N.J.A.C. 10:46C except when there is the need for an emergency service or emergency placement. . . .  Each individual's abilities, needs and preferences are different. Division staff shall consider the circumstances of each individual in light of his or her unique situation in making placement decisions. Division staff shall exercise reasonable professional judgement in making such decisions.  N.J.A.C. 10:46B-1.1.

The provisions of this chapter shall apply to all eligible individuals. The provisions of this chapter shall not apply to persons involved in the Self–Determination Process. Residential placement will be offered to individuals placed on the Division's Priority Waiting List, as described at N.J.A.C. 10:46–1.4 unless they meet the criteria of N.J.A.C. 10:46B–3.3, "emergencies," 4.2, "private institutions," or 4.3, "private out-of-State placements."  N.J.A.C. 10:46B-1.2.

[6] Pursuant to N.J. Stat. Ann. § 30:4–25.9, the applicant shall apply for and maintain all current and future benefits for which he or she may be eligible, including, but not limited to, Medicare, Medicaid, any other State or Federal benefits, and any third-party support pursuant to statute, rule, court order, or contract. The Division offers services funded through Medicaid and Medicaid waivers. In order for the Division to provide waiver services to an individual, the individual must be eligible for the waiver, the

On December 23, 2014, the DDD acknowledged receipt of the December 22 application and request for emergency funding at the Flicker Center.  Bassion Cert., Ex. A & B.  That same date, Defendants filed a Motion to Dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6) and 12(b)(1) [22].

On January 12, 2015, the DDD advised Plaintiff that she was eligible for DDD services and covered by Medicaid, Bassion Cert., Ex. C, but also advised of the waiting list for community care waiver services,[7] id.  Finally, on January 30, 2015, the DDD denied Plaintiff's request for an emergency placement[8] because she was not homeless;

---

service provided must be a waiver service, and the setting in which the service is provided must meet waiver requirements. The individual, guardian, or representative-payee, as applicable, must apply for the appropriate waiver and comply with all the requirements of eligibility for these benefits. The individual, guardian, or representative-payee is also responsible for maintaining eligibility for those benefits. Medicaid eligibility is determined by and through the appropriate eligibility agency. N.J.A.C. 10:46-1.1(b).

The availability of services shall be limited to the Division's funding in a given fiscal year.  N.J.A.C. 10:46-1.1(d).

[7] If the applicant is determined eligible, Division staff shall notify the applicant, in writing, within 10 working days of the determination and such notice shall include information regarding the service(s) deemed most suitable by the intake worker or the intake team.

1. If the most appropriate service as determined by the intake worker or the intake team is not immediately available, the Division shall provide an alternate service.

2. The Division may also place the eligible individual's name on the Community Care Waiver Waiting List in accordance with N.J.A.C. 10:46C and/or any other applicable waiting lists. **Nothing in this paragraph entitles an individual determined eligible for services to immediate enrollment on the Community Care Waiver or any other service for which there may be a waiting list.**

N.J.A.C. 10:46-4.2(c) (emphasis added).

[8] The Division of Developmental Disabilities, Department of Human Services intends this chapter to establish standards and criteria for the placement of eligible persons, pursuant to N.J. Stat. Ann. § 30:4–25.6. Placements are made in accordance with

although Bancroft provided notice of intent to discharge Plaintiff on January 12, she continued to reside there. "In addition, without minimizing the concerns [raised by Plaintiff's brother], the Division can provide supports in [his] home setting that would mitigate the presence of imminent peril." The DDD also informed Plaintiff's brother of the process to appeal that decision. Bassion Cert., Ex. D; Second Panitch Decl., Ex. 9.[9]

---

N.J.A.C. 10:46C except when there is the need for an emergency service or emergency placement. . . . Each individual's abilities, needs and preferences are different. Division staff shall consider the circumstances of each individual in light of his or her unique situation in making placement decisions. Division staff shall exercise reasonable professional judgement in making such decisions. N.J.A.C. 10:46B-1.1.

Residential placement will be offered to individuals placed on the Division's Priority Waiting List, as described at N.J.A.C. 10:46–1.4 unless they meet the criteria of N.J.A.C. 10:46B–3.3, "emergencies," 4.2, "private institutions," or 4.3, "private out-of-State placements." N.J.A.C. 10:46B-1.2.

[9] "Emergency" means that the eligible person is homeless or in imminent peril. N.J.A.C. 10:46-1.3.

"Emergency services" means a supervised apartment operated by an agency with whom the Division specifically contracts to provide services for up to 60 days when the Division determines that an emergency exists. Services provided include safety, stabilization and assessment prior to a long-term placement or return to the former living arrangement. Emergency services are not considered a residential placement as defined in this rule. N.J.A.C. 10:46-1.3.

"Funded vacancy" means a residential placement opportunity with a provider agency that is presently funded through a contract with the Division which becomes available when an individual receiving services moves from that placement. N.J.A.C. 10:46-1.3.

"Homeless" means that the person has no place to live or the person's living arrangement will end on a date certain within 30 days and he or she has no other living arrangements after that date. N.J.A.C. 10:46-1.3.

"Imminent peril" means a situation which could reasonably be expected to cause serious risk to the health, safety or welfare of the individual receiving services or another person in the current living arrangement. Imminent peril does not exist if the Division can put supports into the living arrangement which eliminate the serious risk to the individual. N.J.A.C. 10:46-1.3.

On February 5, 2015, Bancroft advised Plaintiff's brother of its intent to discharge Plaintiff, but stated that the staff hoped to find her an alternative placement[10] within 15 to 30 days.  Second Panitch Decl., Ex. 10.  That day, Plaintiff filed a second motion for an Order to Show Cause why a preliminary injunction should not issue [26] "ordering Defendants to provide funding for the current placement, services, and supports in place for Mindi Panitch at the Judith B. Flicker Center operated by Bancroft until this case may be decided on the merits."  Plaintiff also filed a Motion for an Order to Show Cause why the Court should not order expedited limited discovery [27].  She seeks her DDD file to support her irreparable harm argument, under the theory that her DDD case worker thought her complex case made her appropriate for the Flicker Center.

Discussion

"A State plan for medical assistance must . . . provide that all individuals wishing to make application for medical assistance under the plan shall have opportunity to do so, and that such assistance shall be furnished with reasonable promptness to all eligible individuals."  42 U.S.C. § 1396a(a)(8).  "A State plan for medical assistance must . . . provide . . . for making medical assistance available, . . . to . . . all [eligible] individuals."

---

[10] "Placement" means a waiver service as defined at N.J.A.C. 10:46–1.3 that provides a residence to the individual or day services that are provided out of the residence. N.J.A.C. 10:46B-1.3.

"Private institution" means a private residential facility for the developmentally disabled located in New Jersey which is licensed in accordance with N.J.A.C. 10:47, or any out-of-State institutional placements.  N.J.A.C. 10:46B-1.3.

"Residential placement funded by the Division of Developmental Disabilities" means a living arrangement that is operated by the Division and certified by the Department of Human Services, licensed by the Department of Human Services under N.J.A.C. 10:44A, 10:44B or 10:44C or is licensed by the Department of Health and Human Services under N.J.A.C. 10:47 and regulated by the Department of Human Services.  N.J.A.C. 10:46B-1.3.

42 U.S.C. § 1396a(a)(10). "For purposes of [42 U.S.C. §§ 1396 et seq.] . . . [t]he term 'medical assistance' means payment of part or all of the cost of the following care and services . . . for individuals . . . who are [eligible:] . . . services in an intermediate care facility for the mentally retarded" also known as an Intermediate Care Facility for Individuals with Intellectual Disabilities ("ICF/ID") or an institution.  42 U.S.C. § 1396d(a)(15), 1396d(d)(1).  States may not limit access to ICF/ID service, or make it subject to waiting lists.  http://www.medicaid.gov/medicaid-chip-program-information/by-topics/delivery-systems/institutional-care/intermediate-care-facilities-for-individuals-with-mental-retardation-icfmr.html.  The provisions of 42 U.S.C. §§ 1396 et seq. cited here have been read to create rights enforceable through a private cause of action.  <u>Sabree v. Richman</u>, 367 F.3d 180, 190 (3d Cir. 2004) ("In requiring states which accept Medicaid funding to provide [ICF/ID] services with reasonable promptness, Congress conferred specific entitlements on individuals in terms that could not be clearer." (Internal quotation omitted.)).

Section 1915(c) of the Social Security Act allows states to "waive" requirements of the original Medicaid legislation and create so-called waiver programs that provide care in the home and in the community as an alternative to institutional care.  "The Secretary may by waiver provide that a State plan approved under this subchapter may include as 'medical assistance' under such plan payment for part or all of the cost of home or community-based services . . . ." 42 U.S.C. § 1396n(c)(1).  In New Jersey, "[t]he Medicaid Community Care Waiver (CCW) is a program for individuals with developmental disabilities that pays for the services and supports they need in order to live in the community.  Administered by DDD, the CCW is funded by the state, with assistance from the federal government's Medicaid program. . . . Without the CCW,

New Jersey could only use Medicaid funding to help provide services to these individuals if they resided in an institution.  The federal government allowed states to create waivers, including the CCW, as a way to help individuals with specific needs avoid institutionalization and return to or remain in the community."  http://www.state.nj.us/humanservices/ddd/services/ccw/.

However, pursuant to N.J.A.C. 10:46C, unless an individual is declared to be in imminent peril -- an emergency -- by the DDD, he or she may be placed on a waiting list for determination of eligibility for enrollment on the CCW because the availability of such services is limited to the DDD's funding in a given fiscal year.  http://www.state.nj.us/humanservices/ddd/services/ccw/ccwwl.html.  Indeed, the Medicaid Act and its implementing regulations requires the State to cap the number of individuals (a "population limit") who receive services under the home and community based-waiver. 42 U.S.C. § 1396n(c)(9) refers to the waiver containing "a limit on the number of individuals who shall receive home or community-based services"; 42 U.S.C. § 1396n(c)(10) prohibits the Secretary from capping this limit to fewer than 200 individuals in a State who may receive services under the home and community-based waiver.  Similarly, 42 C.F.R. § 441.303(f)(6) requires the State to indicate the number of individuals it intends to serve under the waiver, and states that this figure will constitute a limit on the size of the waiver program.  Accord Makin v. Hawaii, 114 F. Supp. 2d 1017, 1028 (D. Haw. 1999) ("while the Medicaid Act requires a state to offer feasible alternatives available under the waiver to all eligible individuals, the HOBS-MR program is not 'available'[11] under the statute when the slots available under the

---

[11] "Available" means the service may be offered within the limitations of funding in a given fiscal year.  N.J.A.C. 10:46B-1.3.

'population limit' have been filled."); see also Brown v. Tenn. Dep't of Fin. & Admin., 561 F.3d 542, 548 (6th Cir. 2009) ("a waiting list for waiver services does not violate federal law because the state's duty is to pay for services, not to ensure they are provided").

It appears that Bancroft's Flicker Center is an approved facility under New Jersey's CCW program, but is not an ICF/ID.  Accordingly, Defendants have argued that "Plaintiff did not request nor apply for placement at one of the Division's ICF/ID facilities.  Given that [Plaintiff] continues to reside at Flicker and is not in imminent peril, the Division denied [her] request for emergency funding of Flicker on January 30, 2015."  "If dissatisfied with the Division's decisions, [Plaintiff], like all Division clients, may challenge the decision exercising her State administrative remedies. Relief could be obtained from the New Jersey Superior Court. See N.J. Rules of Court 2:2-3."  Reply Br., p. 3-4.

## Conclusion

The record is clear that Plaintiff has been found eligible for DDD services.  The Court is without information, however, as to what services have been requested by or offered to Plaintiff as a result.

Therefore,

---

"Benefits" means all current and future sources of cash and health assistance from Federal, State, or private entities including, but not limited to, Social Security, SSI, Medicare, Medicaid, State, and Federal funds and any third-party support pursuant to State rule, order, or by contract. N.J.A.C. 10:46-1.3.

IT IS ORDERED this 2nd day of April, 2015 that the parties provide the Court, in writing, within ten days with answers to the following questions **with support for each response**:

-What information was provided by Defendants regarding the service(s) deemed most suitable by the intake worker or the intake team for Plaintiff's care?

-Is Bancroft's Flicker Center a licensed intermediate care facility for individuals with intellectual disabilities (ICF/ID)?

-Has Plaintiff requested an ICF/ID placement?

-Has Plaintiff applied for the CCW waiting list?

-Is there an unduplicated recipient slot for Plaintiff on the CCW program, given that she already is at the Flicker Center, so that she may not have to be placed on a waiting list?

-What is the current status of Plaintiff?

      /s/ Joseph H. Rodriguez
JOSEPH H. RODRIGUEZ
U.S.D.J.